**Appeal No. 13-1378**

*In the*

# United States Court of Appeals

*for the*

# Tenth Circuit

---

JAMES P. TENNILLE, ADELAIDA DELEON,
YAMILET RODRIGUEZ, and ROBERT SMET,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees*,

v.

THE WESTERN UNION COMPANY
and WESTERN UNION FINANCIAL SERVICES, INC.,

*Defendants-Appellees*,

and

SIKORA NELSON,

*Objector-Appellant.*

---

*Appeal from a Decision of the United States District Court for the District of Colorado (Denver)*
*No. 1:09-CV-00938 - Hon. John L. Kane, Jr.*

## OPENING BRIEF OF APPELLANT SIKORA NELSON

John E. Anding, Esq.
Theodore J. Westbrook, Esq.
DREW, COOPER & ANDING
Attorneys for Appellant
Aldrich Place, Suite 200
80 Ottawa Avenue NW
Grand Rapids, MI 49503
(616) 454-8300

*Attorneys for Appellant*

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES........................................................................ iv

STATEMENT OF PRIOR AND RELATED APPEALS ......................... 1

JURISDICTIONAL STATEMENT ...................................................... 2

STATEMENT OF THE ISSUES............................................................ 3

STATEMENT OF THE CASE................................................................ 4

    I.    Procedural History................................................................. 4

        A.    Western Union's Practice of Retaining Funds Belonging to Consumers of Its Money Transfer Services Leads to this Class Action. ........................................................ 4

        B.    Western Union Seeks to Defeat the Class Action by Moving to Compel the Named Plaintiffs into Individual Arbitration. ....................................................... 5

        C.    The Named Parties Reach a Proposed Settlement. ...................... 6

        D.    The Proposed Settlement Contemplates a Severe Compromise of Class Members' Claims against Western Union. ..................................................................... 6

        E.    The District Court Preliminarily Certifies the Settlement Class and Approves the Proposed Settlement by Adopting the Parties' Proposed Order Verbatim, without Any Independent Analysis, and Settlement Notices Are Issued................................................................. 10

        F.    The District Court Summarily "Overrules" Objections without Addressing their Substance. .......................... 12

        G.    Adopting the Proposed Final Judgment and Order of Dismissal Verbatim, and Issuing No Opinion, the District Court Certifies the Settlement Class and Approves the Proposed Class Settlement. ...................... 15

i

II.   The District Court Enters the Bond Order Forming the Basis for this Appeal and Begins Contempt Proceedings that Would Force Abandonment of the Fairness Appeal. ........................................ 16

   A.   The District Court Orders Nelson to Post a $1 Million Bond or Forfeit Her Right to Appeal. ......................................... 16

   B.   The District Court Abates the Bond Order, then Reaffirms It after Nelson's Opening Brief in the Fairness Appeal Is Filed. ........................................................ 18

   C.   The District Court Initiates Contempt Proceedings Which Would Force Nelson to Abandon Her Appeal. .......................... 19

   D.   This Court Stays the Bond Order and Contempt Proceedings in the District Court and Grants Expedited Review. ..................................................................... 20

STATEMENT OF FACTS ............................................................... 21

   I.   Western Union's Retention and Use of Funds Belonging to Putative Class Members and Its Failure to Notify Them of the Failed Transfers are Uncontroverted. ................................... 21

   II.   Named Plaintiffs' Western Union Money Transfers. ......................... 22

   III.   Nelson and an Unknown Number of Other Settlement Class Members Did Not Sign Agreements to Arbitrate. ............................ 23

SUMMARY OF ARGUMENT ......................................................... 27

ARGUMENT ................................................................................ 30

   I.   Standard of Review. ........................................................ 30

   II.   The $1 Million Cost Bond Imposed By the District Court Impermissibly Includes Over $980,000 in Costs that Are Not Taxable Under Any Substantive Provision of Law or Rule. .............. 31

   A.   Substantive Law Determines the Contours of "Costs on Appeal" that May Be Included in a Rule 7 Bond. ..................... 32

B.    Where No Applicable Statute Determines the Costs that Are Taxable, Rule 7 "Costs on Appeal" Are Limited to Those Specified in Rule 39. ......................................................... 36

C.    The District Court Did Not Find that Nelson's Appeal Was Likely Frivolous; and Even If It Had, Rule 38 Sanctions Are Not "Costs on Appeal" that Can Be Included in a Rule 7 Bond. ........................................................ 38

D.    The $1 Million Bond Order Is Based on a False Premise. ........ 41

E.    Wrongly Decided and Largely Unpublished District Court Decisions Imposing Unlawful Bond Requirements Are Not Persuasive ...................................................................... 43

III.   The District Court's Imposition of a $1 Million Cost Bond Requirement Violated Nelson's Due Process Rights and Improperly Burdened Her Statutory Right to Appeal. ......................... 46

CONCLUSION ....................................................................... 51

ADDENDUM: RULES AND STATUTES ................................................ 52

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ..................................... 54

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS ................................................................. 55

CERTIFICATE OF SERVICE ................................................................ 56

# INDEX OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998)......................................................*passim*

*Alapattah Servs. v. Exxon Corp.*, No. 91-0986,
    2006 U.S. Dist. LEXIS 88829 (S.D. Fla. Apr. 7, 2006).........................43, 44

*Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007)............*passim*

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ..........................................................47

*Citizens for Responsible Gov't State Political Action Comm.*
    *v. Davidson*, 236 F.3d 1174 (10th Cir. 2000) ..................................................31

*Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir. 1974)..............................49

*ClearOne Commun'cns, Inc. v. Bowers*,
    651 F.3d 1200 (10th Cir. 2011) .......................................................................30

*Dennings v. Clearwire Corp.*, No. C10-1859,
    2013 U.S. Dist. LEXIS 97540 (W.D. Wash. July 11, 2013).........................44

*F.T.C. v. Kuykendall*, 371 F.3d 745 (10th Cir. 2001) .........................................19, 49

*F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850 (10th Cir. 2003)...............20

*Garrett v. Fleming*, 362 F.3d 692 (10th Cir. 2004) ..................................................30

*Griffin v. Illinois*, 351 U.S. 12 (1956)......................................................................47

*Heekin v. Anthem*, No. 1:05-cv-01908,
    2013 U.S. Dist. LEXIS 26700 (S.D. Ind. Feb. 27, 2013)............................44

*Heike v. United States*, 217 U.S. 423 (1910) ..........................................................47

*Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312,
        1997 U.S. App. LEXIS 13793 (3d Cir. June 10, 1997)...............32, 33, 37, 40

*In re AOL Time Warner, Inc. Securities & ERISA Litig.*, MDL No. 1500,
        2007 U.S. Dist. LEXIS 69510 (S.D.N.Y. Sept. 20, 2007) ...........................45

*In re American President Lines, Inc.*, 779 F.2d 714 (D.C. Cir. 1985) ............*passim*

*In re Bayer Corp. Comb. Aspirin Prods. Mktg. & Sales Prac. Litig.*,
        No. 09-md-2023, 2013 U.S. Dist. LEXIS 125555
        (E.D.N.Y. Sept. 3, 2013) ...............................................................................45

*In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004)....................32, 37

*In re Currency Conv. Fee Antitrust Litig.*, MDL No. 1409,
        2010 U.S. Dist. LEXIS 27605 (S.D.N.Y. Mar. 5, 2010)...............................45

*In re Harper*, 725 F.3d 1253 (10th Cir. 2013) ..........................................................30

*In re Initial Pub. Offering Sec. Litig.*,
        728 F. Supp. 2d 289 (S.D.N.Y. 2010) ..........................................................45

*In re Navistar Diesel Engine Prods. Liab. Litig.*, MDL No. 2223,
        2013 U.S. Dist. LEXIS 113111 (N.D. Ill. Aug. 12, 2013)...........................45

*In re Toyota Motor Unintended Acceleration Litig.*, No. 8:10ML02151,
        2013 U.S. Dist. LEXIS 156986 (C.D. Cal. Oct. 21, 2013) ....................45, 46

*In re Uponor, Inc.*, No. 11-MD-2247,
        2012 U.S. Dist. LEXIS 130140 (D. Minn. Sept. 11, 2012) .........................44

*In re Uponor, Inc.*, 716 F.3d 1057 (8th Cir. 2013) ...................................................44

*In re Wal-Mart Wage & Hour Employment Prac. Litig.*, MDL 1735,
        2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010)................................44

*Int'l Floor Crafts, Inc. v. Dziemit*, 420 Fed. Appx. 6,
        2011 U.S. Dist. LEXIS 8181 (1st Cir. Apr. 21, 2011) ..............................32, 37

*Lindsey v. Normet*, 405 U.S. 56 (1972) .................................................................47

*Marek v. Chesny*, 473 U.S. 1 (1985)...........................................................33, 34, 35

*Martrano v. Quizno's Franchise Co., L.L.C.*, No. 08-0932,
    2009 U.S. Dist. LEXIS 52025 (W.D. Pa. June 15, 2009) ...........................24

*Mattox v. Disciplinary Panel*, 758 F.2d 1362 (10th Cir. 1985)................................30

*Miletak v. Allstate Ins. Co.*, No. 06-037778,
    2012 U.S. Dist. LEXIS 125426 (N.D. Cal. Aug. 27, 2012).........................43

*Muniz v. Cavazos*, 312 Fed. Appx. 86,
    2008 U.S. App. LEXIS 1341 (10th Cir. 2008) ................................................30

*North Carolina v. Pearce*, 395 U.S. 711 (1969).......................................................47

*Pedraza v. United Guaranty Corp.*, 313 F.3d 1323 (11th Cir. 2002)...............*passim*

*Roberts v. LaVallee*, 389 U.S. 40 (1967) .................................................................50

*Rodriguez v. IBP, Inc.*, 243 F.3d 1221 (10th Cir. 2001).........................................49

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002) ...........30

*Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987) .................................................40

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)....................................................................................24

*United States v. Clark*, 84 F.3d 378 (10th Cir. 1996)..............................................30

*United States v. Nichols*, 169 F.3d 1255 (10th Cir. 1999).......................................30

*Vaughn v. American Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007).............*passim*

*Williams v. Shaffer*, 385 U.S. 1037 (1967) ............................................................50

*Young v. New Process Steel, LP*, 419 F.3d 1201 (11th Cir. 2005).........30, 32, 35, 37

## **Other Authority**

10th Cir. R. 8.1 ..................................................................................20

28 U.S.C. § 1291 .............................................................................2, 47

28 U.S.C. § 1332 .................................................................................2

Fed. R. App. P. 4 ..................................................................................2

Fed. R. App. P. 7 ...........................................................................*passim*

Fed. R. App. P. 8 ................................................................................31

Fed. R. App. P. 38 .............................................................38, 39, 40, 45

Fed. R. App. P. 39 .............................................................32, 36, 37, 38

Fed. R. Civ. P. 23 .................................................................10, 14, 24

Fed. R. Civ. P. 62 ................................................................................31

Fed. R. Civ. P. 68 ..........................................................................33, 34

S. Childress & M. Davis,
    Fed. Standards of Review § 2.13 at 2-92 (2d ed. 1986) ................................30

## STATEMENT OF PRIOR AND RELATED APPEALS

A previous appeal to this Court was filed by Defendants The Western Union Company and Western Union Financial Services, Inc. on November 23, 2011 and was assigned Case Number 11-1531. That appeal was abated upon limited remand for the district court's consideration of a proposed settlement between the named parties. Subsequently, Plaintiff-Objector Sikora Nelson appealed the district court's approval of the proposed settlement; that appeal ("Fairness Appeal") was assigned Case Number 13-1310 and is pending. A related appeal was filed by Plaintiff-Objector Paul Dorsey ("Dorsey Appeal") and was assigned Case Number 13-1317. Subsequent to the filing of the Fairness Appeal and the Dorsey Appeal, the district court entered an Order imposing an "appeal bond" requirement of over $1 million on Appellants Nelson and Dorsey. The present Appeal ("Bond Appeal"), Case Number 13-1378, is from that Order. Dorsey also appealed the same Order; that appeal was assigned Case Number 13-1456. Pursuant to this Court's Order of November 7, 2013 (Doc. 1019154380), this Appeal is companioned with Dorsey's appeal (No. 13-1456) for purposes of disposition.

# JURISDICTIONAL STATEMENT[1]

The district court had jurisdiction over the claims asserted below under 28 U.S.C. § 1332(d)(2)(A) because the amount in controversy exceeds $5,000,000 and members of the putative class of plaintiffs are from different states than the Defendants.  On June 26, 2013, the district court entered an Amended Final Judgment and Order of Dismissal, which constituted a final order.  Subsequently, on September 10, 2013, the district court entered an Order requiring Appellant to post an appellate cost bond of over $1 million, which constituted a final order. This Court has jurisdiction to hear the present appeal pursuant to 28 U.S.C. § 1291 and Federal Rule of Appellate Procedure 4(a)(1)(A) because Appellant timely filed a Notice of Appeal on September 10, 2013.

---

[1] Plaintiffs have challenged the Court's jurisdiction over this Appeal via Motion to Dismiss.  (Doc. 1019152048.)  Nelson has separately filed a Response treating this Court's jurisdiction (Doc. 1019157170) and does not repeat her argument here.

## <u>STATEMENT OF THE ISSUES</u>

1.      Whether the district court erred in setting a cost bond, pursuant to Federal Rule of Appellate Procedure 7, of over $1 million which included approximately $980,000 in "notice" and "administrative" expenses allegedly resulting from the delay in class settlement administration caused by Appellant's appeal, where no substantive law or rule allows the taxing of such costs.

2.      Whether the district court erred in imposing a cost bond, pursuant to Federal Rule of Appellate Procedure 7, of over $1 million where the undisputed evidence establishes that such a bond amount would effectively prohibit the appeal of an impecunious individual appellant.

## STATEMENT OF THE CASE

**I.    PROCEDURAL HISTORY.**

**A.    Western Union's Practice of Retaining Funds Belonging to Consumers of Its Money Transfer Services Leads to this Class Action.**

Plaintiff James Tennille filed the first action in this consolidated case on April 23, 2009.  (Apx. 25.)[2]  The chief allegations were that Defendant The Western Union Company acted wrongfully by: (1) retaining funds submitted to it by consumers of its money transfer services when those funds were not received by the intended transferees; (2) failing to return such funds to the transferor; (3) earning interest income on these retained funds; and (4) failing to notify the consumers that the funds had not been received.  (Apx. 25-26.)  The initial Complaint alleged that such conduct violated the Colorado Consumer Protection Act and constituted actionable unjust enrichment and conversion.  A second Class Action Complaint was filed by Plaintiff Robert Smet on April 2, 2010 alleging similar conduct on Western Union's part and similar claims for relief.  These cases, each of which asserted national class claims, were consolidated on April 12, 2010. (Apx. 61-62.)

_____

[2] Citations to pages in Appellant's Appendix are designated throughout this Brief as "Apx."

**B.    Western Union Seeks to Defeat the Class Action by Moving to Compel the Named Plaintiffs into Individual Arbitration.**

Western Union asserted that the class action could not proceed because Western Union had the right to force individual arbitration of the Plaintiffs' claims against it.   (Apx. 119.)   Western Union's Motion to Compel Arbitration was premised on Western Union's assertion that each named Plaintiff—which then included additional named Plaintiffs Adelaida DeLeon and Yamilet Rodriguez (2d Amend. Compl., Apx. 89)—had signed an agreement containing an arbitration clause as part of the money transfer transactions they initiated through Western Union.   (Apx. 126-30; Apx. 146-49.)   Western Union maintained that the proposed class representatives could be forced into individual arbitration.

At the time Western Union filed its Motion to Compel Arbitration, minimal discovery had been conducted.   (Apx. 209:8-211:10.)   Some information had been exchanged, but no depositions had been taken.   On July 15, 2011, the district court ruled that merits-based discovery would be stayed, and the only discovery that could proceed would be related to the arbitrability issue.   (Apx. 230:20-231:6, 241:9-18.)

Western Union's Motion to Compel Arbitration was heard on November 21, 2011.   The district court agreed with Plaintiffs and ruled that Western Union could not force them into individual arbitration.   (Apx. 282:10-283:16, 284:12-285:1; 291.)   Western Union filed an interlocutory appeal of that decision (Case 11-1531).

This Court granted Western Union's motion to stay the district court proceedings during the pendency of the appeal. (Apx. 292-93.)

### C.    The Named Parties Reach a Proposed Settlement.

While Western Union's interlocutory appeal regarding the enforceability of the arbitration provisions remained pending, and prior to the submission of briefing, the case was submitted to mediation. During that process, Plaintiffs and Western Union reached an agreement on settlement terms. This Court then granted a limited remand for the district court to consider the settlement proposed by the parties. (Apx. 294-95.) At that time, no class certification proceedings had taken place and no class had yet been certified.

### D.    The Proposed Settlement Contemplates a Severe Compromise of Class Members' Claims against Western Union.

The settlement proposed by named Plaintiffs and Western Union bears the following features:

- The claims at issue are described as "common law claims for unjust enrichment, conversion, and breach of fiduciary duty."[3] (Apx. 337.)

- The settlement class is defined as all persons who initiated a funds transfer through Western Union since January 1, 2001 whose transferred funds were not "redeemed" within 60 days, where:

---

[3] The proposed settlement also notes that Plaintiffs brought claims for violation of state consumer protection laws and that those claims were dismissed by the district court.

- o The consumer has not claimed the funds from Western Union (i.e, Western Union still holds the funds); or

- o Western Union informed the consumer that the funds were about to "escheat" to the state or the consumer sought and received a refund from Western Union (i.e., Western Union no longer holds the funds). (Apx. 339 ¶ 1.C.)

- Western Union is broadly released from any and all claims "arising from or related to the sale or marketing of any of Western Union's money transfer services … of any kind or character, known or unknown." (Apx. 342 ¶ 1.R.)

- A Common Fund is created by depositing "into the Class Settlement Fund the Class members' *unclaimed* money transfer funds, less administrative fees and charges as specified in the Class members' contracts and/or permitted by state statutes, held by Western Union on the date of Final Approval."[4] (Apx. 345 ¶ 2.A.3.)

- The Common Fund made up of Class Member monies held by Western Union is distributed as follows:

  - o To class counsel pursuant to a fee award (Apx. 365 ¶ 5.A);[5]

  - o To the claims administrator to pay expenses of settlement administration (Apx. 353 ¶ 3.B);

  - o To the named Plaintiffs in the amount of $7,500 each (Apx. 364 ¶ 4.A);

  - o *Pro rata* to settlement class members in the following amounts:

---

[4] The Common Fund consists of money in Western Union's custody that Western Union admits belongs to the consumers in the first instance. (Apx. 527.) It is currently estimated to be $135 million. (Apx. 663.)

[5] Plaintiffs' counsel have requested a fee comprising 30% of the Common Fund, which amounts to over $40 million. (Apx. 471.) Western Union has opposed counsels' request, and their fee request continues to be contested in the district court.

- ▪ For class members who have **not received** refunds (i.e., Western Union still holds the funds), the face amount of the transfer, *less* Western Union's "administrative fees," plus approximately 2% interest per year (Apx. 349 ¶ 2.C.1);[6]

- ▪ For class members who **have received** refunds, approximately 2% interest for the time their funds were held by Western Union (Apx. 349 ¶ 2.C.2, 350 ¶ 2.C.5).

- o Any remaining funds are used to create a *cy pres* fund that is transferred to the various state treasuries.  (Apx. 366-67.)

- • A second, much smaller fund, is created using Western Union's own funds. Class members whose funds have "escheated," i.e., Western Union has transferred their funds to the state treasury pursuant to unclaimed property laws, receive an interest award from this fund of approximately 2% per year for the time their funds were held by Western Union.  (Apx. 347-48 ¶ 2.B.2, 361 ¶ 3.G.8.)

- • Western Union agrees to implement new notice procedures for future transactions.  (Apx. 350-51.)

In short, the proposed settlement contemplates (1) an extremely broad release to Western Union which covers claims never asserted in the lawsuit; (2) a transfer of funds belonging to one subset of class members (but held by Western Union)[7] into a Common Fund to pay attorney fees, administrative costs, the claims of the funding class and the claims of *other* class members who already received

---

[6] The 2% figure is estimated by Western Union's expert based on the formula set forth in the proposed settlement agreement.  (Apx. 512 n.29.)

[7] Western Union does not claim to own the funds that will be deposited into the Class Settlement Fund, but rather concedes that these funds have always belonged to the putative class members.  (Apx. 473-74.)

- 8 -

refunds; (3) Western Union keeps $29.6 million in "administrative fees" it levied for holding the funds (albeit allegedly wrongfully);[8] and (4) Western Union's own funds are used only to pay interest claims of class members whose funds "escheated" to the states.[9]

The proposed class settlement does not define or differentiate any sub-classes on the basis of either (1) materially stronger claims held by certain class members due to the absence of arbitration provisions in their agreements with Western Union; or (2) materially different potential recoveries provided by laws of the various states. The proposed class settlement also does not require disgorgement of administrative fees retained by Western Union or address putative class members' actual losses.

---

[8] The amount of these administrative fees derives from information provided to Plaintiffs' counsel by Western Union. (Apx. 460-61 ¶ 65.)

[9] Assuming $83 million "escheated" during the proposed class period (Apx. 460-61 ¶ 65), an average period of five (5) years and an interest rate of 2%, this fund could be estimated at a maximum value of $8.6 million. In practice, Western Union is unlikely to pay even 15% of this amount, or $1.3 million. (Apx. 498 ¶ 8, 503 ¶ 17, 512 n.29, 513 ¶¶ 42-45.)

**E.    The District Court Preliminarily Certifies the Settlement Class and Approves the Proposed Settlement by Adopting the Parties' Proposed Order Verbatim, without Any Independent Analysis, and Settlement Notices Are Issued.**

On December 21, 2012, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement (Apx. 296) which attached the proposed settlement agreement (Apx. 337) along with a proposed Order Preliminarily Approving Settlement and Providing for Notice prepared by counsel (Apx. 385).  No hearing was held.  On January 3, 2013, the district court entered the proposed Order verbatim, including the recitation therein that "[t]he Court finds that certification of the Class meets the requirements of Federal Rule 23 … Class Representatives, and Class Counsel, will fairly and adequately protect the interests of the Class."  (Apx. 398-99; *compare* Apx. 387-88.)  No independent analysis by the district court regarding preliminary approval of the settlement class or proposed settlement appears in the record.

Once the district court preliminarily approved the proposed settlement, the parties' notice plan was implemented.  This included, among other elements,

mailing a settlement notice (Apx. 407) to putative class members.[10]  The settlement

notice describes the claims at issue:

> This settlement involves a lawsuit over whether Western Union Financial Services, Inc. ("WUFSI") and the Western Union Company (collectively, "Western Union" *timely notified its customers of unredeemed Western Union Transactions* in the United States using Western Union's money transfer services.

(Apx. 407, emphasis added.)  This description is repeated under the heading "What

is this lawsuit about?":

> The lawsuit claims that Western Union *did not timely notify its customers that their Western Union Transactions were not redeemed* by the receivers to whom the Western Union Transactions were sent, and as a result caused harm to their customers.

(Apx. 408, emphasis added.)   The settlement notice does not mention Plaintiffs'

claims, asserted on behalf of the putative class, that Western Union's allegedly

wrongful conduct also consisted of *unlawfully retaining and failing to return funds*

belonging to the putative class members.

The settlement notice then purports to explain the terms of the release:

> If you are a class member and you do not exclude yourself, you will be deemed a member of the Class participating in the settlement and

---

[10] The effectiveness of the notice plan depended in part upon receipt by the settlement administrator of up-to-date, accurate and complete information regarding putative class members' contact information from Western Union. Whether efforts were made to verify the completeness or accuracy of the information provided to the settlement administrator by Western Union is unclear from the record available to the public.

give up your right to sue Western Union for the **claims that this settlement resolves**, whether or not you file a claim form.

\*       \*       \*

All Class members who do not actively exclude themselves, regardless of whether they file a valid claim form or not, also release all claims they have against Western Union including the right to sue Western Union or the Released Parties (identified in Section 10.B of the Settlement Agreement) regarding all of the claims resolved by the Settlement, as described more fully in Section 10 of the Settlement Agreement.

However, **you will NOT give up your right to sue Western Union or any of the Released Parties for any other claims (that is, any claims that were not resolved by the Settlement)**.

(Apx. 412, Apx. 416, emphasis added.)

### F.    The District Court Summarily "Overrules" Objections without Addressing their Substance.

After issuance of the settlement notice, several putative class members, including Appellant Sikora Nelson (Apx. 549-77), filed objections to the proposed settlement.  In addition, the Attorneys General of thirteen (13) states and the District of Columbia filed an *amicus curiae* brief opposing the proposed settlement.  (Apx. 579.)

In addition to filing written objections, Nelson through her counsel appeared at the Fairness Hearing  to present her objections to the district court on June 24, 2013.  She objected primarily on four (4) grounds: (1) the significant compromise of putative class members' claims was inappropriate where Nelson and other

putative class members had never signed contracts that included arbitration provisions; (2) the structure of the settlement effected an unjustified windfall to Western Union by allowing it to keep unlawful administrative charges; (3) the settlement notice had not fairly apprised the class members regarding the claims at issue and the terms of the settlement; and (4) Plaintiffs did not adequately represent Nelson and other Michigan class members because Michigan law provides a materially greater recovery—treble actual damages and attorney fees—for the wrongdoing alleged against Western Union.  (Apx. 554-64; Apx. 645:1-650:18.)

The district court's only response came immediately at the close of Nelson's argument at the Fairness Hearing:

> ***[T]he claims for fraud and conversion were dismissed early on in this litigation.  And the only claims remaining at the time the notice went out was for unjust enrichment.***  The equitable claims were the only ones that I ruled could be handled on a nationwide basis.
>
> As counsel has pointed out, the – there's an opt-out provision for members of the class.  It could easily opt out and do their own litigation if they wish.  But I think Ms. Nelson's objection illustrates how difficult it is to maintain a nationwide class action when you have multiple individual states and their individual laws to contend with.  And the individual legal claims were ***all subject to dismissal*** in this case for several reasons, including these different laws that would apply to claims depending on residency.
>
> The litigation went forward as a class action with respect to the equitable claims for unjust enrichment and disgorgement.  These claims sound in equity and they gave the Court more leeway than individual claims for fraud, unfair competition, and treble damages, ***which were precluded***, and I think consistent with the law, and they

- 13 -

are consistent throughout the various states from which the class members come.

So there was a common question of law to be litigated in the class action, but it wasn't a particular state consumer statute or fraud or any of the others that were dismissed from the case.

As I've indicated, this particular Michigan resident, Ms. Nelson, could have opted out, or if opted in, her recovery would be premised on claims for disgorgement of profits, interest income earned on her money, and on the money of all those individual members like her. The settlement doesn't reflect the higher stakes of liability for treble damages because those treble damages were simply not pursuable in federal court in a nationwide class action. *So I considered the objection but I'm overruling it.*

(Apx. 651:1-652:12, emphasis added.)[11]  The district court never mentioned any of

the other three grounds upon which Nelson had objected to the proposed

settlement.

As to the required showing of the prerequisites for class certification under

Federal Rule of Civil Procedure 23(a), the district court stated only that "[t]he

plaintiffs demonstrated that the proposed class representatives meet the threshold

prerequisites of Rule 23(a) of numerosity, commonality, typicality, and adequacy

---

[11] The district court was mistaken that the conversion claims asserted by Plaintiffs were dismissed.  Indeed, the district court had denied Western Union's motion to dismiss those claims.  The operative complaint, the Second Amended Consolidated Class Action Complaint, states a conversion count.  (Apx. 93 ¶ 17, 107-08.) Further, the proposed settlement agreement, which the district court approved twice, states that Plaintiffs maintain claims for "unjust enrichment, conversion, and breach of fiduciary duty."  (Apx. 337.)

of representation." (Apx. 653:20-23.)   The district court did not address or mention the arguments presented by the Attorneys General in their *amicus* brief.

### G.   Adopting the Proposed Final Judgment and Order of Dismissal Verbatim, and Issuing No Opinion, the District Court Certifies the Settlement Class and Approves the Proposed Class Settlement.

On June 24, 2013, the day of the Final Fairness Hearing, Plaintiffs filed a proposed Final Judgment and Order of Dismissal which recites that all required criteria for class certification are met, that notice was properly provided to the class, that the settlement is approved and that the claims of class members are released. (Apx. 610.)  The following day, the district court entered the proposed Final Judgment and Order of Dismissal verbatim.  (Apx. 666.)  An identical Amended Final Judgment and Order of Dismissal entered the next day.  (Apx. 681.)  The district court never issued any opinion or other independent analysis regarding either its reasons for rejecting the objections presented to it or its findings in connection with certifying the settlement class or approving the proposed settlement.   Nelson appealed the district court's certification of the settlement class and approval of the class settlement.   That appeal remains pending.  (No. 13-1310, "Fairness Appeal.")

II.    **THE DISTRICT COURT ENTERS THE BOND ORDER FORMING THE BASIS FOR THIS APPEAL AND BEGINS CONTEMPT PROCEEDINGS THAT WOULD FORCE ABANDONMENT OF THE FAIRNESS APPEAL.**

A.    **The District Court Orders Nelson to Post a $1 Million Bond or Forfeit Her Right to Appeal.**

On August 12, 2013, Plaintiffs filed a Motion for Appeal Bond ("Bond Motion") asking the district court to require Objector-Appellants (Nelson and one other Objector filing an appeal, Paul Dorsey) to post a "cost bond" in the amount of $1,007,294. (Apx. 696.)  The requested amount of the bond consisted of: (1) $647,674 purportedly to be incurred in sending a "supplemental notice," which Plaintiffs contended "should be sent to the class informing the class of the pendency of the appeal;" (2) an estimated $334,620 in "settlement administration" costs allegedly resulting from the delay of appeal; and (3) $25,000 in printing and copying costs. (Apx. 700-03.)  The Bond Motion is framed only as a motion for a bond securing taxable cost on appeal pursuant to Federal Rule of Appellate Procedure 7  (Apx. 697-98); the proposed settlement by its own terms renders a *supersedeas* bond superfluous by providing that the settlement does not become effective until the conclusion of all appeals (Apx. 343 ¶ 1.V).

Nelson filed a Response in Opposition to the Bond Motion which argued that (1) the $982,294 in notice and administrative expenses claimed by Plaintiffs are not taxable costs and cannot be included in an appeal bond as a matter of law; and (2) imposition of a large cost bond would violate Nelson's due process rights

because, as a low-income individual without the financial resources to post a large bond, such a bond requirement would effectively destroy her right to appeal. (Apx. 709-18.)  Nelson's Response included evidence that Nelson lives paycheck-to-paycheck, has essentially no savings and cannot afford to post any significant bond.  (Apx. 721-22.)

On September 10, 2013, the district court granted Plaintiffs' Bond Motion in full and issued an Order ("Bond Order"), less than two pages long, which cites no case law or statutes and recites no legal standard for the imposition of cost bonds on appeal.  (Apx. 723-24.)  The only analysis proffered by the district court read:

> The appeal, like the objection it seeks to vindicate, is not meritorious, but even if it were, the costs it imposes on the Settlement Class and the claims process that will be delayed as a result are substantial and undisputed.  I GRANT the Motion and will require an appeal bond in the amount of $1,007,294 to cover the potential costs of Objector Nelson's and Objector Dorsey's appeals, itemized as follows:
>
>      A.    $647,674 for the costs of providing a supplemental notice to the Settlement Class;
>
>      B.    $334,620 to cover increased settlement administration costs of $37,180 per month for nine months; and
>
>      C.    $25,000 to cover the costs of printing and copying and preparation of a supplemental record on the appeals.

(Apx. 724.)    The district court characterized the Fairness Appeal as "not meritorious" sight unseen; Nelson's Opening Brief in the Fairness Appeal (Doc.

10117435) was not filed until several weeks later. Nelson immediately filed a Notice of Appeal regarding the Bond Order.

**B.    The District Court Abates the Bond Order, then Reaffirms It after Nelson's Opening Brief in the Fairness Appeal Is Filed.**

Objector-Appellant Paul Dorsey had not been served with Plaintiffs' Bond Motion, and informed the district court of that fact by letter. On September 10, 2013, the same day the Bond Order was entered and Nelson filed her Notice of Appeal, the district court entered another Order in which it treated Dorsey's letter as a "motion for reconsideration" and abated the Bond Order to address the points raised in the letter. (Apx. 725-26.) The due date for Nelson's Opening Brief in the Fairness Appeal fell during the abatement of the Bond Order, and Nelson filed her Opening Brief on October 15, 2013. (Doc. 10117435.)

Six days later, on October 21, the district court reaffirmed the Bond Order, again citing no authority and again without addressing the substance of Nelson's arguments. (Apx. 727-31.) The district court did not assert a legal standard or basis for any aspect of the $1,007,294 bond and did not address Nelson's due process argument. The October 21, 2013 Order did not set any date for compliance, but did state that "[w]ith the exception of ancillary attorney fee issues, which … do not affect appellate jurisdiction, the proceedings in the district court are CONCLUDED." (Apx. 731.)

**C.     The District Court Initiates Contempt Proceedings Which Would Force Nelson to Abandon Her Appeal.**

On October 21, 2013, the day of the district court's Order reaffirming the Bond Order, Plaintiffs demanded by letter that Nelson either post the $1 million bond or withdraw the Fairness Appeal.  (Apx. 738.)  One week later, Plaintiffs filed a motion entitled Motion for Order to Show Cause Why Objectors Sikora Nelson and Paul Dorsey Should Not Be Held in Contempt of Court ("Show Cause Motion").  (Apx. 732.)  Even though no date had been set for the posting of the bond, Plaintiffs argued that Nelson and Dorsey were in violation of the district court's reinstated Bond Order and should be held in contempt of court "for their failure to comply with this Court's Appeal Bond Order (Dkt. #299) by posting the required appeal bond or dismissing their appeals."  (Apx. 736.)

The following day, without allowing Nelson to respond, the district court granted the Show Cause Motion ("Show Cause Order").  (Apx. 739-40.)  The district court stated in the Show Cause Order:

> As of October 28, 2013, no bond has been posted and ***neither Objector has responded to Class Counsel's request for confirmation as to whether they will post the bond or voluntarily dismiss their appeals*** ….  I specifically find that both Objectors are aware of the [Bond Order], and are disobeying that order.  Under the authority established by *F.T.C. v. Kuykendall*, 371 F.3d 745 (10th Cir. 2001), ***both are subject to sanctions for civil contempt***.

(Apx. 740, emphasis added.)   The district court ordered Nelson and Dorsey to "show good and sufficient cause why they should not be held in contempt of court for their failure to comply" with the Bond Order by November 8, 2013.

### D.    This Court Stays the Bond Order and Contempt Proceedings in the District Court and Grants Expedited Review.

Faced with contempt proceedings in the district court, Nelson filed in this Court an Emergency Motion to Stay District Court Proceedings and for Expedited Review on October 31, 2013.  (Doc. 1019150687.)   On November 4, Plaintiffs filed a response (Doc. 1019152048) and a Motion to Dismiss challenging the jurisdictional basis for this Appeal (Doc. 1019152048).[12]   On November 7, 2013, this Court granted Nelson's Emergency Motion to Stay, finding that Nelson had made the requisite showing of four factors: "(1) the likelihood of success on appeal; (2) the threat of irreparable harm if the stay or injunction is not granted; (3) the absence of harm to opposing parties if the stay or injunction is granted; and (4) any risk of harm to the public interest."   (Doc. 1019154380 (citing *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003); 10th Cir. R. 8.1).)   The Court also granted expedited consideration of this Appeal and Dorsey's appeal (No. 13-1456) and set oral argument in this Appeal for January 21, 2014.

---

[12] Nelson separately filed a Response to Plaintiffs' Motion to Dismiss (Doc. 1019157170) and does not treat contested jurisdictional issues in the present Brief.

## STATEMENT OF FACTS

I. **WESTERN UNION'S RETENTION AND USE OF FUNDS BELONGING TO PUTATIVE CLASS MEMBERS AND ITS FAILURE TO NOTIFY THEM OF THE FAILED TRANSFERS ARE UNCONTROVERTED.**

The facts presented in this lawsuit are not contested by Western Union. Western Union provides money transfer services to consumers whereby consumers, for a fee, entrust funds to Western Union for transfer to a specified person or entity. Under normal circumstances, the funds are delivered to the intended recipient within a matter of days. This lawsuit concerns what happens when the funds do not reach their intended recipient.

When Western Union receives funds from consumers, Western Union invests those funds. In situations in which the funds are not received by the intended recipient for any reason, Western Union continues to hold the funds and continues to derive income from investing them. Although Western Union maintains contact information for the sender, Western Union does not notify the sender that the funds have not been received by the intended recipient. Thus, consumers remain unaware that Western Union is holding and profiting from its investment of the funds.

The only notification Western Union provides to the consumer occurs just prior to Western Union's transfer of the funds to the applicable state treasury pursuant to that state's unclaimed property statute. Western Union's practice is to

send a notice to the consumer that the transfer funds, less Western Union's administrative fee, may be redeemed. Thus, depending on the laws of the state from which the transaction originated, Western Union holds consumers' funds for three to six years before any attempt is made to notify the consumer.

## II.    NAMED PLAINTIFFS' WESTERN UNION MONEY TRANSFERS.

Each of the named Plaintiffs' transactions with Western Union followed a similar pattern: they attempted to send funds through Western Union's money transfer services; those funds were not received by the intended recipient; Western Union failed to notify them of the failed transfer and held funds for several years; and ultimately Western Union returned some portion of the funds after deducting an administrative fee. (Apx. 94-96.) The following table represents relevant features of each named Plaintiff's transactions:

| Plaintiff | State of Transaction | Year of Transaction | Year Notified | Refund Received | Admin. Fee |
|---|---|---|---|---|---|
| James Tennille | Alabama | 2002, 2003 | 2008 | Yes | $30 per transaction |
| Robert Smet | Illinois | 2004 | 2010 | Yes | $30 |
| Adelaida DeLeon | Missouri | 2002 | 2010 | Yes | Yes, unknown |
| Yamilet Rodriguez | New Jersey | 2007 | 2010 | Yes | $18.50 |

(Apx. 94-96.) In connection with its Motion to Compel Arbitration, Western Union provided evidence that each named Plaintiff—and indeed each putative class member initiating a Western Union money transfer transaction between 2001

- 22 -

and 2007—signed a money transfer form that incorporated a mandatory arbitration clause.    (Apx. 126-30; Apx. 146-99.)    The arbitration provisions are each substantially similar to the clause appearing in the most recent form agreement provided by Western Union:

> Any dispute or claim arising from or relating to this transaction, including disputes regarding this paragraph, shall be settled by binding arbitration administered by the National Arbitration Forum ("NAF") under its Code of Procedure in effect when the dispute is filed … [n]either party shall have the right to participate as a member of any class of claimants pertaining to any claim.

(Apx. 191; *accord.* Apx. 155, 160, 167, 173, 179, 185, 198.)[13]    The record is devoid of any reference to Western Union form agreements that were in use between 2008 and 2013.

## III.    NELSON AND AN UNKNOWN NUMBER OF OTHER SETTLEMENT CLASS MEMBERS DID NOT SIGN AGREEMENTS TO ARBITRATE.

Appellant Sikora Nelson used Western Union's money transfer services on numerous occasions to pay bills.  (Apx. 550.)  She attempted two such transactions on August 25, 2011 and November 16, 2011 to make payments of $348.50 on an

---

[13] The only substantive changes to Western Union's form agreements between 2000 and 2007 appear to have been made in early 2003, after which the form agreements are altered in two ways: (1) the arbitration provision is no longer limited to disputes involving claims for less than $10,000; and (2) the arbitration forum specified for resolution of disputes is changed from the American Arbitration Association to the National Arbitration Forum, and the applicable arbitration rules are changed accordingly.  (Apx. 146-99.)

- 23 -

auto loan.  The funds were never received by Nelson's credit union and have never

been refunded to Nelson by Western Union.  The only clue Nelson received that

the funds transfers were not completed came in the form of the settlement notice

issued in this case.

At the time of each transaction, Nelson signed a Western Union form

agreement that bears no arbitration provision.[14]  (Apx. 662-65.)[15]  Yet the proposed

settlement, by its terms, extends to *all* consumers of Western Union money transfer

services whose transactions took place between January 1, 2001 and the date of

_____

[14] In its stead, the form agreement provides:

> WAIVER/BAR OF CLASS ACTION CLAIMS: All legal actions or
> claims arising from or relating to this transaction or the Services
> ("Claim") shall be brought in the party's individual capacity only.
> Neither party shall pursue a Claim as a class representative, a class
> member or in a class representative action of any kind.

This clause is void as a matter of law.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399-402 (2010) (holding that under Supremacy Clause and Rules Enabling Act, state law could not preclude or modify Rule 23 class action procedures); *Martrano v. Quizno's Franchise Co., L.L.C.*, No. 08-0932, 2009 U.S. Dist. LEXIS 52025, *76-85 (W.D. Pa. June 15, 2009) (holding consistent with *Shady Grove* that purported waiver of class mechanism in private agreements did not override Rule 23).  Neither Plaintiffs nor Western Union framed this issue for the district court and the district court never addressed it.

[15] At the Final Fairness Hearing held on June 24, 2013, Nelson presented these form agreements to the district court and to Plaintiffs' and Western Union's counsel in connection with oral argument in support of her Objections.  (Apx. 645:6-646:10.)

preliminary approval of the settlement, January 3, 2013. (Apx. 339 ¶ 1.C; Apx. 397-98.) The settlement contemplates a release of all claims of those consumers against Western Union in connection with money transfer services, regardless of whether the consumer signed an arbitration provision. (Apx. 342 ¶ 1.R.) Nelson does not know, and the record does not reveal any indication that Plaintiffs have attempted to find out, how many other members of the putative class never signed agreements to arbitrate.[16]

The district court has acknowledged that many of the settlement class members who used Western Union's money transfer services from 2001 through 2013 are "unsophisticated or non-native English speakers" who are ill-equipped to understand the legal concepts surrounding the class settlement, and there is no dispute that many or most settlement class members are low-income or impoverished individuals. (Apx. 730-31.) Nelson is a single woman who supports herself and her ailing mother, has no significant savings and lives paycheck-to-

---

[16] Class counsel have, however, asserted that Western Union produced every iteration of its form agreement, which if true would necessarily include the form signed by Nelson. (Apx. 455 ¶ 40.) Nelson notes that her review of the record regarding the arbitrability issue is hampered by the fact that Plaintiff's response to Western Union's Motion to Compel Arbitration, Western Union's Reply to that response, and the exhibits thereto were filed under seal and remain under seal. (Dkt. 112; Dkt. 131.)

paycheck.  (Apx. 722.)  She would be unable to pay her bills if required to post a substantial bond.  (Apx. 722.)

## SUMMARY OF ARGUMENT

Sikora Nelson objected to the class settlement penned by the named Plaintiffs and Western Union because that settlement unfairly burdens the rights of Nelson and settlement class members like her. Nearly 100% of the settlement costs—including all attorney fees, all administrative costs and 99% of all "awards" to class members—are paid by taking funds from class members like Nelson. None of the settlement costs are paid by class members similarly situated to the named Plaintiffs, whose funds have already been returned by Western Union. Less than 1% of the awards are paid by Western Union, while Western Union: (1) keeps over $29 million in "administrative charges" it levied while it wrongfully held class members' funds; and (2) and pays nothing for fees or costs.

Nelson objected to this settlement because it is not fair to her or to others like her: those whose funds are still held by Western Union (unlike the named Plaintiffs); or those who never signed agreements bearing arbitration clauses (unlike the named Plaintiffs); or those who could assert claims for materially greater recoveries under Michigan law (unlike the named Plaintiffs). The settlement does not hold Western Union accountable, but nonetheless provides to it an expansive release of claims—asserted and unasserted—on behalf of the entire settlement class.

The district court overruled Nelson's objections to the settlement in perfunctory fashion, finding only that treble damages were "not available," and proceeded to adopt verbatim the Final Judgment and Order of Dismissal proposed by Plaintiffs' counsel. The district court thus approved certification of the settlement class and the proposed settlement while issuing no independent opinions, findings of fact or conclusions of law. Nelson appealed.

This Appeal concerns the extent to which a district court is empowered to impose a "cost bond" that secures costs which no provision of substantive law allows to be taxed to an unsuccessful litigant. The district court imposed a "cost bond" requirement on two individuals filing notices of appeal from the district court's certification of the settlement class and approval of the class settlement. That "cost bond," in the amount of $1,007,294, was ordered to secure: (1) $647,674 for the expense of providing a "supplemental notice" to the settlement class; (2) $334,620 to cover "increased settlement administration costs" resulting from the delay of appeal; and (3) $25,000 for printing and copying costs. As a matter of law, the first two categories of "costs" are not "costs on appeal" that may be taxed by the prevailing party. Every Federal Circuit Court that has examined the issue has held that the only costs that may be included in an appeal bond required under Federal Rule of Appellate Procedure 7 are those costs that are taxable under the applicable substantive law. No provision of substantive law

allows shifting these "notice" or "administrative" expenses to a losing party. Moreover, these "costs" are expenses brought about by a settlement that does not even become effective until after the conclusion of all appeals. The premise for requiring a bond under Rule 7 is false, and the request premature. The district court's Bond Order, which included $982,294 in impermissible "notice" and "administrative" expenses, must be reversed.

This Appeal also concerns the extent to which a district court is empowered to impose a "cost bond" requirement, as a prerequisite to pursuing a principled appeal, that is unmistakably beyond an impecunious individual appellant's means. Nelson cannot afford to post a bond that is thirty times greater than her annual income. Knowing this, the district court could not, consistent with due process, order the posting of a $1 million bond on threat of contempt. The district court's Bond Order, which would effectively preclude appeal based only on Nelson's financial condition and inability to pay, denies Nelson the equal protection of the laws that is her constitutional right.

The district court's Bond Order erred in imposing a bond requirement that is impermissible, both by law and by constitutional mandate, and that would effectively preclude this Court's review of the district court's considerable mishandling of this consumer class action. The Bond Order should be reversed.

# ARGUMENT

## I.   STANDARD OF REVIEW.

The extent and type of costs allowable under Federal Rule of Appellate Procedure 7 are questions of law which the Court of Appeals reviews *de novo*. *Adsani v. Miller*, 139 F.3d 67, 70 (2d Cir. 1998) (citing S. Childress & M. Davis, Fed. Standards of Review § 2.13 at 2-92 (2d ed. 1986); *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1328 (11th Cir. 2002); *Young v. New Process Steel, LP*, 419 F.3d 1201, 1203 (11th Cir. 2005); *see also Muniz v. Cavazos*, 312 Fed. Appx. 86, 88, 2008 U.S. App. LEXIS 1341, *3 (10th Cir. 2008) (decision involving interpretation of Federal Rules of Appellate Procedure is reviewed *de novo*) (citing *Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004)).

The Court of Appeals reviews *de novo* whether a federal district court's order meets constitutional standards of due process and equal protection.  *In re Harper*, 725 F.3d 1253, 1256 (10th Cir. 2013) (citing *Mattox v. Disciplinary Panel*, 758 F.2d 1362, 1364 (10th Cir. 1985)); *United States v. Nichols*, 169 F.3d 1255, 1267 (10th Cir. 1999)); *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1186 (10th Cir. 2002) ("Due process issues, which call for legal conclusions, are subject to de novo review.") (quoting *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996)); *ClearOne Commun'cns, Inc. v. Bowers*, 651 F.3d 1200, 1216 (10th Cir. 2011) ("We review questions of constitutional law *de novo*.") (quoting

*Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d
1174, 1193 (10th Cir. 2000)).

## II. THE $1 MILLION COST BOND IMPOSED BY THE DISTRICT COURT IMPERMISSIBLY INCLUDES OVER $980,000 IN COSTS THAT ARE NOT TAXABLE UNDER ANY SUBSTANTIVE PROVISION OF LAW OR RULE.

The district court relied only on Federal Rule of Appellate Procedure 7 in
imposing a $1,007,294 bond requirement on Nelson.[17]  (Apx. 723.)  Included in the
amount to be bonded were $982,294 in "notice costs" and "administrative
charges."   The district court fundamentally erred in ignoring that only "costs on
appeal"—not any and all conceivable costs—may be bonded against pursuant to
Rule 7.  As every Federal Court of Appeals to approach the issue has found, "costs
on appeal" includes *only* those costs that are taxable to the losing party according
to the applicable substantive law.  Because no provision of substantive law allows
shifting "notice" and "administrative" costs onto an unsuccessful appellant, the
district court's inclusion of these "costs" in its Bond Order was error.

---

[17] A stay of proceedings was not necessary to prevent enforcement of the proposed
settlement pending appeal because by its terms the settlement does not become
effective until the conclusion of all appeals.  (Apx. 343 ¶ 1.V.)  Thus, no
*supersedeas* bond could be required under Federal Rule of Civil Procedure 62 or
Federal Rule of Appellate Procedure 8.

### A.    Substantive Law Determines the Contours of "Costs on Appeal" that May Be Included in a Rule 7 Bond.

Federal Rule of Appellate Procedure 7 provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of *costs on appeal*" (emphasis added).   The Rules do not define "costs on appeal;" however, numerous Courts of Appeals have found that "costs on appeal" for the purposes of imposing a Rule 7 bond are defined by reference to the substantive law applicable to the case; in other words, "costs on appeal" includes only those costs taxable under the applicable substantive law.  *See, e.g.*, *Adsani v. Miller*, 139 F.3d 67, 74-79 (2d Cir. 1998); *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 956-62 (9th Cir. 2007); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 817-18 (6th Cir. 2004); *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1329-34 (11th Cir. 2002); *Young v. New Process Steel, LP*, 419 F.3d 1201, 1203-04 (11th Cir. 2005); *Int'l Floor Crafts, Inc. v. Dziemit*, 420 Fed. Appx. 6, *16-18, 2011 U.S. Dist. LEXIS 8181 (1st Cir. Apr. 21, 2011).   Only two Circuit Courts have addressed the issue and reached a different result; both have found that *no costs* other than those provided in Federal Rule of Appellate Procedure 39 may be included in a Rule 7 bond.  *In re American President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985); *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 U.S. App. LEXIS 13793, *3-7 (3d

Cir. June 10, 1997).[18]  No Circuit Court has ever upheld an order imposing a Rule

7 bond that includes amounts for "notice costs" or "administrative costs."

The Second Circuit's opinion in *Adsani*, which four other Circuit Courts

have found persuasive, is instructive here as well.  In *Adsani*, the plaintiff brought

claims under the Copyright Act.  139 F.3d at 69.  After the district court granted

summary judgment in favor of the defendants, which the plaintiff appealed, the

district court granted the defendants' motion to impose a Rule 7 bond of $35,000

"to cover the costs of appeal and a possible award of attorney's fees associated

with that appeal."  *Id.* at 70.  On appeal of the bond order, the Second Circuit

considered the U.S. Supreme Court's decision in *Marek v. Chesny*, 473 U.S. 1

(1985), which held that "costs" for the purposes of Federal Rule of Civil Procedure

68 are defined according to the substantive law applicable to the cause of action;

the Second Circuit found that *Marek* "provides very persuasive authority for the

proposition that the statutorily authorized costs may be included in the appeal bond

authorized by Rule 7."  *Adsani*, 139 F.3d at 73.  The Second Circuit thus held that

because the Copyright Act allowed attorney fees to be levied against the

unsuccessful plaintiff "as part of costs," expected attorney fees on appeal could

properly be included in a Rule 7 bond.  *Id.* at 74-75.

---

[18] As discussed in Part II.B below, as in the present case, no fee-shifting statute
was at issue in these cases.

The Eleventh Circuit followed suit in *Pedraza*, 313 F.3d at 1333-34, applying the reasoning set forth in *Adsani* and holding that attorney fees cannot form the basis for an appellate cost bond requirement where the cause of action arises under RESPA.  Like the Second Circuit, the Eleventh Circuit found Supreme Court precedent in *Marek* instructive:

> Both [Federal Rule of Civil Procedure 68 and Federal Rule of Appellate  Procedure 7] concern the payment by a party of its opponent's "costs," yet neither provision defines the term "costs." *See Adsani*, 139 F.3d at 74 ("Rule 7 does not have a pre-existing definition of costs any more than Fed. R. Civ. P. 68 … had its own definition.").  Moreover, just as the drafters of Rule 68 were aware in 1937 of the varying definitions of costs that were contained in various federal statutes, the same certainly can be said for the authors of Rule 7, which bears an effective date of July 1, 1968.  As such, the reasoning that guided the *Marek* Court's determination that Rule 68 "costs" are to be defined with reference to the underlying cause of action is equally applicable in the context of Rule 7.
>
> *        *        *
>
> [B]oth *Marek* and *Adsani*'s persuasive application of that decision lead us to conclude that the meaning of "costs," as used in Rule 7, should be derived from the definition of costs contained in the statutory fee shifting provision that attends the plaintiff's underlying cause of action.

*Id.* at 1332-33.  Examining the underlying statute, RESPA, the Eleventh Circuit found that although RESPA does provide for an award of attorney fees to the prevailing party, the statute separately defines "costs" and "attorney fees;" as a result, RESPA's definition of "costs," mapped onto Federal Rule of Appellate Procedure 7, excluded attorney fees.  *Id.* at 1333-34.  The court thus reversed the

district court's imposition of a cost bond that encompassed anticipated appellate attorney fees. *Id.* at 1335-36. The rule embraced by the Eleventh Circuit in *Pedraza* was later succinctly summarized by that court in *Young*: "Rule 7 does not authorize courts to require a bond in an amount larger than 'costs' as defined in the applicable fee-shifting statute." 419 F.3d at 1204 (citing *Pedraza*, 313 F.3d at 1334-35).

Relying on the reasoning in *Adsani*—that "costs on appeal" is defined according to applicable provisions of substantive law—the Ninth Circuit found a similar bond order impermissible in *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 959-60 (9th Cir. 2007). The Ninth Circuit concluded that because the drafters of Rule 7 had not defined the term "costs," they "likely 'intended [it] to refer to all costs properly awardable' at the conclusion of appeal, including attorney's fees authorized by relevant statutory authority." *Id.* at 958 (alteration in original, quoting *Marek*, 473 U.S. at 8-9). The court proceeded to hold that because the Clayton Act's fee shifting provision does not allow recovery of attorney fees from the unsuccessful plaintiff, in a case based upon that Act an appeal bond imposed upon an unsuccessful plaintiff-appellant cannot include amounts for attorney fees on appeal. *Id.* at 959.

The substantive law applicable to the claims Plaintiffs asserted in this case, conversion and unjust enrichment, is found in the common law. Nothing in the

common law allows taxing "notice costs" or "administrative costs" to an unsuccessful party, regardless of whether that party is a plaintiff, defendant or, like Nelson, an objector.   In requesting the $1 million bond to cover these costs, Plaintiffs cited no aspect of substantive law that would allow these costs to be taxed to Nelson.   In imposing the $1 million bond, the district court likewise cited none.   There is no basis for concluding, as the district court did, that $982,294 in putative "supplemental notice costs" and continued settlement "administrative costs" are taxable "costs on appeal" that may be bonded against under Rule 7.   The district court's Bond Order is erroneous and must be reversed.

### B.    Where No Applicable Statute Determines the Costs that Are Taxable, Rule 7 "Costs on Appeal" Are Limited to Those Specified in Rule 39.

No Court of Appeals has found that a district court has unbounded authority to order an appellant to post a bond securing any type of costs.   Regardless of whether a fee-shifting statute underlies the cause of action in a particular case, "costs on appeal" for the purposes of Rule 7 has a definite, ascertainable meaning that is not subject to *ad hoc* redefinition by district courts.   "Costs on appeal" under Rule 7 does not include the "notice" and "administrative" expenses making up $982,294 of the $1 million bond imposed by the district court's Bond Order.

As discussed above, an unbroken line of cases in the Circuit Courts holds that where a fee-shifting statute applies in a given case, a Rule 7 bond imposed for

costs on appeal can include expected appellate attorney fees only where the applicable fee-shifting statute defines attorney fees as recoverable costs. *See Adsani*, 139 F.3d at 74-79; *Azizian*, 499 F.3d at 956-62; *In re Cardizem CD Antitrust Litig.*, 391 F.3d at 817-18; *Pedraza*, 313 F.3d at 1329-34; *Young*, 419 F.3d at 1203-04; *Int'l Floor Crafts*, 420 Fed. Appx. at *16-18. Those cases likewise stand for the proposition that *some rule-based authority* for the taxing of a particular type of costs must exist in order for that type of costs to be included in a Rule 7 bond. No such rule-based authority provides for the taxing of the "notice" and "administrative" expenses included in the $1 million bond imposed by the district court.

In cases like the present case, in which no federal fee- or cost-shifting statute is at issue, Courts of Appeals have held that the "costs on appeal" referenced in Rule 7 are limited to the costs enumerated in Rule 39. *In re American President Lines, Inc.*, 779 F.2d 714, 716-18 (D.C. Cir. 1985); *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 U.S. App. LEXIS 13793, *3-7 (3d Cir. June 10, 1997). Rule 39 provides only for the taxing of: (1) printing and copying costs for briefs, appendices and records; (2) costs for preparation and transmission of the record; (3) costs for the reporter's transcript, if needed; (4) premiums paid for a *supersedeas* or other bond; and (5) the filing fee for the notice of appeal. Fed. R. App. P. 39(c), (e). Clearly, $982,294 for "supplemental notice" and "settlement

administration" expenses do not fall into any of the categories of costs enumerated in Rule 39.

   **C.    The District Court Did Not Find that Nelson's Appeal Was Likely Frivolous; and Even If It Had, Rule 38 Sanctions Are Not "Costs on Appeal" that Can Be Included in a Rule 7 Bond.**

Unsurprisingly given Nelson's unvarnished criticism of the district court's decisions to certify the settlement class and approve the class settlement proposed by the parties, the district court found that Nelson's appeal was "not meritorious."[19]  (Apx. 724.)  However, the district court did not find either that Nelson's appeal was frivolous, or that this Court would likely deem Nelson's appeal frivolous.  Thus, the district court did not justify any part of its $1 million Bond Order by reference to potential sanctions this Court could award under Federal Rule of Appellate Procedure 38.  Even if the district court had done so, persuasive Circuit Court authority holds that potential Rule 38 sanctions are not properly bonded against under Rule 7.

Federal Rule of Appellate Procedure 38 provides:

   If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable

---

[19] Nelson believes her Fairness Appeal is meritorious and that her Opening Brief in that appeal (Doc. 10117435) demonstrates the gravity of the district court's errors in approving settlement class certification and the proposed class settlement. Ultimately this Court will decide if she is correct.

> opportunity to respond, award just damages and single or double costs
> to the appellee.

The district court did not mention any aspect of Rule 38 in its Bond Order or its

October 21, 2013 Order reaffirming the Bond Order.  It did not find that Nelson's

appeal was likely frivolous; and it did not describe any category of the expenses to

be bonded against as "damages" or "costs" awardable under Rule 38.  In fact, the

district court cited to no case and no rule other than Rule 7 in imposing the $1

million bond requirement.  Regardless, even assuming *arguendo* the district court

based its imposition of the $1 million bond on a finding of frivolity, a district court

cannot properly require an appellant to post a bond reflecting potential Rule 38

sanctions.

Three Circuit Courts have examined and roundly rejected attempts by

district courts to require bonding of potential Rule 38 sanctions.  *See Azizian*, 499

F.3d at 960-61 (9th Circuit); *In re Am. President Lines*, 779 F.2d at 717 (D.C.

Circuit); *Vaughn v. American Honda Motor Co.*, 507 F.3d 295, 299 (5th Cir. 2007).

The Ninth Circuit in *Azizian* stated its reasoning plainly:

> Award of appellate attorney's fees for frivolousness under Rule 38 is
> highly exceptional, making it difficult to gauge prospectively, and
> without the benefit of a fully developed appellate record, whether
> such an award is likely ….  Moreover, a Rule 7 bond including the
> potentially large and indeterminate amounts awardable under Rule 38
> is more likely to chill an appeal than a bond covering the other
> smaller, and more predictable, costs on appeal.  Finally, in contrast to
> ordinary feeshifting and cost provisions, Rule 38 authorizes an award
> of appellate attorney's fees not simply as an incident to a party's

successful appellate defense or challenge of a judgment below, but
rather as a sanction for improper conduct on appeal.  While Rule 39
expressly authorizes the district court to tax certain costs on appeal,
and while it is usually the district court that ultimately determines
entitlement to expenses including attorney's fees on appeal under fee-
shifting statutes, only the court of appeals may order the sanction of
appellate attorney's fees under Rule 38.

499 F.3d at 960 (citation omitted).  The reasoning of the D.C. and Fifth Circuits is

in accord.  *In re Am. President Lines*, 779 F.2d at 717 ("The District Court's bond

order effectively preempts this court's prerogative to determine, should Safir's

appeal be found to be frivolous, whether APL is entitled to a Rule 38 recovery.");

*Vaughn*, 507 F.3d at 299 ("There is no provision in the rules of procedure for a

district court to predict that an appellate court will find an appeal frivolous and to

set a bond for costs on appeal based on an estimate of what "just damages" and

costs the appellate court *might* award.").[20]

The district court did not justify, and could not have justified, its imposition

of a $1 million cost bond—including $982,294 in "notice" and "administrative"

expenses—by way of any potential for Rule 38 sanctions.  Its decision to impose a

---

[20] The only Circuit Court decision to apparently endorse inclusion of Rule 38
sanctions in a Rule 7 bond amount, *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir.
1987) is of questionable weight in that it both fails to undertake a careful analysis,
unlike the D.C., Fifth and Ninth Circuit decisions above, and is inconsistent with
the First Circuit's own later decision in *Hirschensohn*, 1997 U.S. App. LEXIS at
*3-7 (finding that Rule 7 "costs on appeal" are defined exclusively by Rule 39).

$1 million bond requirement on Nelson as a condition of appeal was error and must be reversed.

### D.     The $1 Million Bond Order Is Based on a False Premise.

Plaintiffs and the district court each appeared to take for granted that the "notice" and "administrative" expenses forming the basis for over $980,000 of the "cost bond" were costs that accrued to settlement class members.  That is not the case.  Indeed, because the class settlement by its own terms becomes effective only upon the conclusion of all appeals, those expenses can be charged to the common fund only if the settlement is ultimately approved by this Court.  In addition to the legal impediments that should have otherwise prevented the district court from issuing the Bond Order, the bond request should have been denied because: (1) it was unripe; and (2) the settlement agreement clearly contemplated and assumed the risk of any "notice" and "administrative" expenses that would accrue during appeal.

The settlement between Plaintiffs and Western Union, though approved by the district court, is not yet effective.  By its terms, the "Settlement Effective Date" is:

> [T]he day after the occurrence of the following events: (1) entry of the Final Approval; and (2) if the Final Approval is appealed, then the Final Approval is not subject to further appeal, or if the Final Approval is not appealed, then the time for the filing or noticing of any appeal of the Final Approval has expired.  If the Final Approval is set aside, materially modified, vacated, or reversed by the Court or by

an appellate court, and is not fully reinstated on further appeal, then the Settlement Effective Date cannot occur.

(Apx. 343 ¶ 1.V.)    Until the Settlement Effective Date occurs, settlement administration costs are paid from an Initial Settlement Fund of $1.3 million paid by Western Union; an amount which is reimbursed to Western Union if the settlement becomes effective.  (Apx. 344-45 ¶ 2.A.2.)  Put differently, the "notice" and "administrative" expenses identified by Plaintiffs and the district court are not presently accruing, and may never accrue, to the class.

Under similar circumstances, the Fifth Circuit in *Vaughn* vacated a purported Rule 7 bond ordered to secure costs to the class of the delay of appeal. 507 F.3d at 298-99.  The court's reasoning applies with equal force here:

> The first reason given by the district court for requiring a bond in the amount of $150,000 is to provide security for the "detrimental impact of an appeal as to the entire class."  To the extent the district court had in mind securing the benefits that would inure to the class members under the settlement agreement, the court was essentially using a bond for costs on appeal as a surrogate for a supersedeas bond.  Bonds to supersede a judgment must be set under Rule 8, not Rule 7.

> The district court alluded to the fact that Honda "stands ready to deliver approximately $10 million in lease funds to class members."  We are persuaded that the costs of delay are adequately captured by the settlement.  The settlement agreement makes no provision for the payment of pre-judgment interest on the benefits Honda has agreed to pay, and the settlement does not become effective, by its terms, until any appeals are concluded.  The parties to the settlement thus agreed that the financial time-value of the benefits to be paid under the settlement is not to be awarded to the plaintiffs.

*Id.*  The Fifth Circuit reduced the bond amount to $1,000.  *Id.* at 300.  As in

*Vaughn*, in the present case the settlement "does not become effective, by its terms,

until any appeals are concluded."  Plaintiffs anticipated the filing of appeals,

knowing the risk of additional settlement administration expenses, and accepted

the terms of the settlement notwithstanding that risk.  Shifting those expenses onto

Nelson, or threatening to do so via the Bond Order, is impermissible.

### E.    Wrongly Decided and Largely Unpublished District Court Decisions Imposing Unlawful Bond Requirements Are Not Persuasive.

This Court need not go beyond the Circuit Court authority in determining

that the Bond Order imposed at least $982,284 in bond requirements that are not

allowable under Rule 7.  However, to the extent this Court is inclined to survey

district court decisions imposing large bond requirements on objector-appellants

and others, it is unlikely to find them persuasive.  Contrasting these cases, which

Plaintiffs relied upon in seeking imposition of the $1 million bond, against Circuit

Court and better-reasoned district court opinions refusing to allow such bonds

further supports reversal of the district court's Bond Order.

Plaintiffs cited in the district court various unpublished district opinions

requiring objector-appellants, purportedly pursuant to Rule 7, to post bonds

securing payment of "administrative costs."  *See Miletak v. Allstate Ins. Co.*, No.

06-037778, 2012 U.S. Dist. LEXIS 125426 (N.D. Cal. Aug. 27, 2012); *Alapattah*

*Servs. v. Exxon Corp.*, No. 91-0986, 2006 U.S. Dist. LEXIS 88829 (S.D. Fla. Apr. 7, 2006); *Dennings v. Clearwire Corp.*, No. C10-1859, 2013 U.S. Dist. LEXIS 97540 (W.D. Wash. July 11, 2013); *Heekin v. Anthem*, No. 1:05-cv-01908, 2013 U.S. Dist. LEXIS 26700 (S.D. Ind. Feb. 27, 2013); *In re Wal-Mart Wage & Hour Employment Prac. Litig.*, MDL 1735, 2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010); *In re Uponor, Inc.*, No. 11-MD-2247, 2012 U.S. Dist. LEXIS 130140 (D. Minn. Sept. 11, 2012).   Apart from the fact that all are unpublished, several common threads run through these opinions.   First, *none* have been upheld on appeal.   Indeed, on appeal to the Eighth Circuit, the bond order issued in *Uponor*— upon which Plaintiffs have placed heavy reliance—was reduced from the "excessive" amount of $170,000 to $25,000.[21]   *In re Uponor, Inc.*, 716 F.3d 1057, 1062 (8th Cir. 2013).   Second, each of these opinions fails to identify any substantive law to suggest that the "administrative" expenses bonded against are in fact taxable costs.   Finally, in each case (apart from *Uponor*) the district court attempted to justify its bond requirement by noting the frivolity of the objector-appellants' position.   These opinions are clearly inconsistent with Circuit Court

---

[21] The district court in *Uponor* had ordered a $170,000 cost bond which was to include purported costs to the class of delay and extra administrative expenses, as well as printing and copying costs.   The remaining $25,000 amount after the Eighth Circuit's reduction of the bond related solely to printing and copying costs. 2012 U.S. Dist. LEXIS at *10.   In *Uponor* there was no discussion of the objector-appellants' financial inability to post a bond.

authority holding that: (1) substantive law determines the parameters of "costs on appeal," and (2) potential Rule 38 sanctions are not "costs on appeal" for Rule 7 purposes.  (*See discussion, supra* Part II.B-C.)

Other district courts have disagreed with the unpublished district opinions cited by Plaintiffs.  These courts have relied on Circuit Court authority in denying requests for bonds to secure "administrative" expenses purportedly incurred because of the delay of appeal.  *See, e.g.*, *In re AOL Time Warner, Inc. Securities & ERISA Litig.*, MDL No. 1500, 2007 U.S. Dist. LEXIS 69510, *9-14 (S.D.N.Y. Sept. 20, 2007) (citing, *inter alia*, *Adsani*, 139 F.3d at 74-75) (refusing to impose bond covering "cost of delay in settlement administration"); *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295-97 (S.D.N.Y. 2010) (same); *In re Bayer Corp. Comb. Aspirin Prods. Mktg. & Sales Prac. Litig.*, No. 09-md-2023, 2013 U.S. Dist. LEXIS 125555, *14-20 (E.D.N.Y. Sept. 3, 2013) (denying motion to impose cost bond covering "delay costs"); *In re Currency Conv. Fee Antitrust Litig.*, MDL No. 1409, 2010 U.S. Dist. LEXIS 27605, *7-9 (S.D.N.Y. Mar. 5, 2010) (citing, *inter alia*, *Azizian*, 499 F.3d at 959; *Vaughn*, 507 F.3d at 299) (denying bond for Rule 38 sanctions and "costs to the settlement fund."); *In re Navistar Diesel Engine Prods. Liab. Litig.*, MDL No. 2223, 2013 U.S. Dist. LEXIS 113111, *5-11 (N.D. Ill. Aug. 12, 2013) (same); *In re Toyota Motor Unintended Acceleration Litig.*, No. 8:10ML02151, 2013 U.S. Dist. LEXIS 156986, *104-07

(C.D. Cal. Oct. 21, 2013).  The principled outcomes reached in these cases, relying on established Circuit Court authority to deny bond requests that exceed Rule 7's scope, stand in stark contrast to the decision reached by the district court in this case.

The district court's Bond Order is not supported by Rule 7 as interpreted by every Circuit Court to address its scope.  On appeal, this Court should find, consistent with the First, Second, Fifth, Sixth, Ninth, Eleventh and D.C. Circuits, that "costs on appeal" for Rule 7 purposes do not include "notice" and "settlement administration" expenses where those expenses are not defined as "costs" by any provision of substantive law.

## III.    THE DISTRICT COURT'S IMPOSITION OF A $1 MILLION COST BOND REQUIREMENT VIOLATED NELSON'S DUE PROCESS RIGHTS AND IMPROPERLY BURDENED HER STATUTORY RIGHT TO APPEAL.

Nelson is a single woman who works full time for less than $35,000 per year.  She lives paycheck-to-paycheck and has no significant savings.  The district court knew, and expressed no doubt, that Nelson could not and cannot afford to post a $1 million cost bond; indeed, even a $25,000 bond for claimed copying and printing costs—the only type of costs included in the Bond Order that are cognizable under Rule 7—is financially impossible for Nelson.  By entering its Bond Order, the district court imposed a bond in an amount sufficient to deter, if not outright foreclose, an appeal of its certification of the settlement class and

approval of the class settlement in this case.  In so doing, the district court put a price on Nelson's statutory right to appeal that she could not pay, but that a well-heeled objector-appellant conceivably could.[22]  This was a denial of due process that this Court should not countenance.

Nelson's statutory right to appeal the certification of the settlement class and approval of the class settlement in this case derives from 28 U.S.C. § 1291.  *Heike v. United States*, 217 U.S. 423 (1910).  Under the Equal Protection Clause of the Fifth Amendment, principles of due process and equal protection mandate that an appeal process established by statute must be fairly and equally accessible to all litigants.  *Adsani*, 139 F.3d at 77 (citing *Lindsey v. Normet*, 405 U.S. 56, 77 (1972); *North Carolina v. Pearce*, 395 U.S. 711, 724-25 (1969)).  A bonding requirement can be unconstitutional when it too heavily burdens the ability of a party to exercise its right to appeal.  *Id.* at 77-79 (citing *In re American President Lines*, 779 F.2d at 718-19; *Boddie v. Connecticut*, 401 U.S. 371, 379-81 (1971)); *see also Griffin v. Illinois*, 351 U.S. 12, 18-19 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.").  Imposition

---

[22] There is no dispute, however, that in this consumer class action few, if any, of the settlement class members would be financially able to post a $1 million bond. It is safe to say that many class members, like Nelson, would be unable to pay their bills if required to post a $5,000 bond.

of a bond in an amount clearly sufficient to foreclose any possibility of appeal surely "too heavily burdens" Nelson's right to appeal.

Nelson cannot know with certainty whether the district court intended by its Bond Order to prevent this Court's review, through the Fairness Appeal, of the district court's handling of this class action.[23]  However, the Bond Order (including the October 21, 2013 Order reaffirming it) and the district court's subsequent Show Cause Order are consistent with such an intent.  The district court did not mention, in setting a $1 million bond, the evidence presented that Nelson cannot afford to post such a bond.  (Apx. 722; Apx. 723-24; Apx. 727-31.)  The district court also accepted without question that $1 million, including "notice" and "administrative" expenses of over $980,000, was an acceptable bond amount to require.  Finally, eight days after reaffirming the Bond Order and one day after Plaintiffs filed their Show Cause Motion, the district court entered a Show Cause Order stating, in relevant part:

---

[23] Specifically, the Fairness Appeal criticizes:  (1) the district court's failure to conduct any independent analysis regarding settlement class certification, including serious conflicts of interest between the named Plaintiffs and the majority of settlement class members; (2) the district court's failure to conduct any independent analysis regarding fairness of the proposed settlement; (3) the inadequacy of the notice provided to settlement class members; and (4) the district court's certification of the settlement class and approval of the settlement notwithstanding these defects.  (Doc. 10117435.)

> As of October 28, 2013, no bond has been posted and neither Objector has responded to Class Counsel's request for confirmation as to *whether they will post the bond or voluntarily dismiss their appeals.* In the meantime, briefing on Objectors' appeals in ongoing, and class settlement administrative costs are accruing. A valid court order as to the imposition of the appeal bond exists and has not been excused by any mitigating order of the Tenth Circuit Court of Appeals. I specifically find that both Objectors are aware of that order, and are disobeying that order. Under the authority established by *F.T.C. v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) and *Rodriguez v. IBP, Inc.*, 243 F.3d 1221 (10th Cir. 2001), *both are subject to sanctions for civil contempt*.

(Apx. 740, emphasis added.) The district court thus found, without allowing Nelson to respond to the Show Cause Motion, that the Bond Order—which had set no compliance date—had been violated and that contempt sanctions were warranted. If the district court had intended to deter or prevent review of its substantive rulings, this course of action would have been an expedient means of doing so; first setting an impossibly large bond, then applying civil contempt sanctions for failure to either comply (which is impossible) or "voluntarily" withdraw the appeal. Under the circumstances, this is akin to ordering Nelson to abandon the Fairness Appeal.

Intentionally or otherwise, the district court's $1 million Bond Order would have, if not stayed by this Court (Doc. 1019154380), usurped this Court's authority to review the district court's decisions below. This court cannot countenance any attempt by the district court to prevent an appeal. *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) ("any attempt by a court at preventing an

appeal is unwarranted and cannot be tolerated."). The district court's imposition of the $1 million Bond Order was not an exercise of discretion; it was a denial of due process guaranteed by the United States Constitution.

"[T]he promise of equal justice for all would be an empty phrase for the poor if the ability to obtain judicial relief were made to turn on the length of a person's purse." *Williams v. Shaffer*, 385 U.S. 1037, 1039-40 (1967); *accord. Roberts v. LaVallee*, 389 U.S. 40, 42 (1967) ("differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution."). The district court attempted to condition access to appeal on Nelson's ability to post a $1 million bond, even though she could not afford to do so, in order to vindicate her right to appeal. If equal justice is not simply an "empty phrase," but rather a guiding principle secured by the Constitution, the district court's Bond Order must be reversed.

## <u>CONCLUSION</u>

The district court's Bond Order was both legally impermissible and inconsistent with Nelson's constitutional due process rights.  This Court should reverse the Bond Order and allow Nelson's substantive appeal (No. 13-1310) to proceed unimpeded.

Respectfully Submitted,

Dated:   November 25, 2013

s/Theodore J. Westbrook
John E. Anding (P30356)
Theodore J. Westbrook (P70834)
**DREW COOPER & ANDING, P.C.**
Attorneys for Appellant
Aldrich Place, Suite 200
80 Ottawa Avenue, NW
Grand Rapids, Michigan  49503

# ADDENDUM: RULES AND STATUTES

**FEDERAL RULE OF APPELLATE PROCEDURE 7**.  Bond for Costs on Appeal in a Civil Case.

In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.  Rule 8(b) applies to a surety on a bond given under this rule.

**FEDERAL RULE OF APPELLATE PROCEDURE 38.**  Frivolous Appeal—Damages and Costs.

If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

**FEDERAL RULE OF APPELLATE PROCEDURE 39**.  Costs.

(a) **Against Whom Assessed**. The following rules apply unless the law provides or the court orders otherwise:

(1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;

(2) if a judgment is affirmed, costs are taxed against the appellant;

(3) if a judgment is reversed, costs are taxed against the appellee;

(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

(b) **Costs For and Against the United States**. Costs for or against the United States, its agency, or officer will be assessed under Rule 39(a) only if authorized by law.

(c) **Costs of Copies**. Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by Rule 30(f). The rate must not exceed that generally charged for such work in the area where the clerk's office is located and should

encourage economical methods of copying.

(d) **Bill of Costs: Objections; Insertion in Mandate.**

    (1) A party who wants costs taxed must -- within 14 days after entry of judgment -- file with the circuit clerk, with proof of service, an itemized and verified bill of costs.

    (2) Objections must be filed within 14 days after service of the bill of costs, unless the court extends the time.

    (3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must -- upon the circuit clerk's request -- add the statement of costs, or any amendment of it, to the mandate.

(e) **Costs on Appeal Taxable in the District Court**. The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

    (1) the preparation and transmission of the record;

    (2) the reporter's transcript, if needed to determine the appeal;

    (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

    (4) the fee for filing the notice of appeal.

### UNITED STATES CONSTITUTION, AMENDMENT V.

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

CA. No. 13-1310

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

JAMES P. TENILLE, ROBERT SMET,
ADELAIDA DELEON, and
YAMILET RODRIGUEZ,
Individually and on behalf of all others
similarly situated,

Plaintiffs,

- v. -

THE WESTERN UNION COMPANY and
WESTERN UNION FINANCIAL
SERVICES, INC.,

Defendants.

---

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. R. 28.1(e)(2) or 32(a)(7) because:

    This brief contains 11,958 words, excluding parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type and style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman, 14-point font.

Dated:  November 25, 2013                   s/Theodore J. Westbrook
                                            John E. Anding (P30356)
                                            Theodore J. Westbrook (P70834)
                                            Counsel for Appellant

## CERTIFICATE OF DIGITAL SUBMISSION
## AND PRIVACY REDACTIONS

All required privacy redactions have been made to this document, and with the exception of those redactions, every document submitted in digital form is an exact copy of the written document filed with the clerk. Said document has been scanned for viruses with Symantec Endpoint Protection which runs real time virus scans, and according to that program is free of viruses.

Dated:  November 25, 2013                    s/Theodore J. Westbrook
                                             John E. Anding (P30356)
                                             Theodore J. Westbrook (P70834)
                                             Counsel for Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2013, Appellant's Brief was filed with

the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit

by using the appellate CM/ECF system which will send notification of such filing

to all counsel of record.


Dated:  November 25, 2013                    s/Theodore J. Westbrook
                                            John E. Anding (P30356)
                                            Theodore J. Westbrook (P70834)
                                            Counsel for Appellant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Judge John L. Kane

Civil Action No. **09-cv-00938-JLK-KMT** (consolidated with No. 10-cv-00765-JLK)

**JAMES P. TENILLE, ROBERT SMET, ADELAIDA DELEON and YAMILET**

**RODRIGUEZ**, individually and on behalf of all others similarly situated,

 Plaintiffs,

   v.

**THE WESTERN UNION COMPANY and WESTERN UNION FINANCIAL SERVICES, INC.,**

 Defendants.

---

**ORDER GRANTING CLASS PLAINTIFFS' MOTION FOR APPEAL BOND (Doc. 268)**

---

Kane, J.

 Final judgment approving a nationwide class-action settlement in this litigation was entered in June 2013.  Since then, two objectors – out of a class numbering more than one million members – have filed notices of appeal.  The Settlement Class has filed a Motion for Appeal Bond under pursuant to Rule 7 of the Federal Rules of Appellate Procedure (Doc. 268), arguing the appeals of objectors Sikora West and Paul Dorsey are substantively baseless and will operate to delay the implementation of a hard-fought nationwide class-action settlement that has already been deemed to be fair and to provide "excellent relief" to the class.  Plaintiffs seek entry of a cost bond to cover the supplemental notice that will be necessary to inform the class of the pendency of the appeal, the additional settlement administration costs that will accrue on a monthly basis as a result of the delay, and printing and copying costs associated with the

1

preparation of a supplemental record on appeal.

Only Ms. Nelson has filed a response to Plaintiffs' Motion, and I am unpersuaded by her argument that the cost bond at issue is a "bullying" tactic aimed at thwarting a "meritorious" appeal and that imposing it would strike a "historic blow to the legal rights of objecting class members."  The appeal, like the objection it seeks to vindicate, is not meritorious, but even if it were, the costs it imposes on the Settlement Class and the claims process that will be delayed as a result are substantial and undisputed. I GRANT the Motion and will require an appeal bond in the amount of **$1,007,294** to cover the potential costs of Objector Nelson's and Objector Dorsey's appeals, itemized as follows:

A. $647,674 for the costs of providing a supplemental notice to the Settlement Class;

B. $334,620 to cover increased settlement administration costs of $37,180 per month for nine months; and

C. $25,000 to cover the costs of printing and copying and preparation of a supplemental record on the appeals.

The $1,007,294 bond shall be payable jointly and severally by the two appealing objectors.

Dated September 10, 2013.

s/John L. Kane
SENIOR U.S. DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **09-cv-00938-JLK** (consolidated with 10-cv-765-JLK)

**JAMES P. TENNILLE, on behalf of himself and all others similarly situated,**

    Plaintiff,

v.

**THE WESTERN UNION COMPANY and WESTERN UNION FINANCIAL SERVICES, INC.,**

Defendants.

---

### ORDER

---

Kane, J.

    This class action litigation arose out of Western Union's business practice of leveraging the time value of unclaimed transfer funds until state unclaimed property laws mandated they disclose and attempt to repatriate them.  In extensive motions practice over a period of years, Western Union succeeded in dismissing all of Plaintiffs' claims save for Plaintiffs' equitable claims premised on various theories of unjust enrichment.  Western Union's motion to compel class members to submit to individual arbitration was denied, and an appeal was taken.  After lengthy negotiations before private and Tenth Circuit mediators, the litigation culminated in a global settlement calling for sweeping and substantive changes to the way Western Union does business. Class members were notified of the Class Action Settlement Agreement and afforded the opportunity both to opt out of the settlement class or to object to the Agreement's terms.

At a fairness hearing held on June 24, 2013, the objections of various class members including Sikora Nelson and Paul Dorsey were heard.  *See* Minutes (Doc. 254). Ms. Nelson appeared personally through counsel.  Mr. Dorsey had been scheduled to appear personally but did not, citing the fact that the hearing had been rescheduled ten days from its original date and Mr. Dorsey could not change his flight.  *See* Withdrawal of Notice of Intention to Appear (Doc. 250).

At the fairness hearing, I heard from counsel on each of the pending objections, including Mr. Dorsey's.  *See* Hg. Tr. (Doc. 257) at pp. 27-35.  Mr. Dorsey's objection focused primarily on the issue of notice and it, together with Ms. Nelson's objection and the pro se objections of a handful of other class members, was overruled.  I proceeded to fairness determinations, and ultimately approved the settlement.  In doing so I described the difficult nature of the case and the exceedingly narrow path the Plaintiff Class faced to a successful resolution.  *Id.* at 30.  I found the parties' agreement to have been the result of "vigorous, at times contentious, negotiations" over a long period of time.  *Id.* at 30.  Given the nature of the dispute and global business practices at issue, I went so far as finding the settlement "remarkable."  *Id.*  Final Judgment on my approval was entered the following day, on June 25, 2013. (Doc. 253.)

Ms. Nelson, through her counsel, filed an appeal of the Final Judgment and my findings overruling her objection, and Mr. Dorsey joined in that appeal.  The matter is before me now on Class Plaintiffs' Motion for Appeal Bond (Doc. 268), which I originally granted over Ms. Nelson's written objection and without hearing from Mr.

Dorsey given that the time for responding to the Motion had run.  (Doc. 272.)  Mr.

Dorsey's handwritten response was received in chambers later that same day.  *See* Letter

from P. Dorsey (Doc.273).  Given Mr. Dorsey's pro se status and the nature of the relief

that had been ordered against him, I treated his letter as a Motion for Reconsideration and

directed Class Counsel to respond to it.  *See* Order re Letter from Mr. Dorsey (Doc. 275).

Class Counsel did so in the form of a Motion to Supplement the Record to Respond to

Objector Dorsey's Request for Claims Administration Invoice (Doc. 289).  Class Counsel

also filed a separate Reply in support of their Motion for Appeal Bond.  (Doc. 284).  I

gave Mr. Dorsey the last word on the appeal bond issue by directing him to file his "final

response/reply in support of his Motion for Reconsideration" (Doc. 291), which he timely

filed on October 15, 2013.  (Doc. 294).  Accordingly, Mr. Dorsey's response to Class

Plaintiffs' Motion for Appeal Bond stands fully briefed, and I address it as follows:

The substance of Mr. Dorsey's objection to Plaintiffs' Motion for Appeal Bond

was the lack of evidentiary basis for the $1,007,294 bond amount.[1]  Mr. Dorsey questions

Class Counsel's representations regarding the need for an additional mass mailing to the

nationwide class to notify them of the appeal and resulting delays, as well as counsel's

---

[1] I pause briefly to dispose of the parties' dispute regarding the legal standard applicable to Mr. Dorsey's response.  Class Counsel emphasizes the procedural vehicle, citing law in this circuit regarding Motions for Reconsideration that preclude revisiting a decision of the Court absent demonstration of a mistake "not of reasoning but of apprehension . . . [or] a significant change or development in the law or facts since submission."  Class Pls' Response (Doc. 284) at 1.  Mr. Dorsey asks that his Motion be treated as a request to respond to the Motion for Appeal Bond in the first instance.  Given Mr. Dorsey's pro se status and his history of diligent participation throughout the course of the settlement proceedings, I apply no heightened standard and consider his substantive Reponse, filed on September 30, 2013 (Doc. 287) on its merits.

assertions regarding call volume and $37,180 per month in additional administrative

costs.  Mr. Dorsey asks Class Counsel to provide copies of invoices and phone records to

support these claims "as a show of good faith," and asks whether supplemental class

notice could not be effected "by simply and efficiently posting an update on the website

maintained by the Class Administrator" rather than pursue costly individualized mailing.

Finally, Mr. Dorsey asks whether Class Counsel "really intend(s) to advise the Class of

what their options are while the appeal remains pending, as it stated to the Court in its

Motion for Bond," or is that "just posturing for the Court?" The gist of Mr. Dorsey's

response is that Class Counsel's estimates regarding the cost of the delay were

exaggerated as a "bullying tactic against the Objectors."  *See* Mr. Dorsey's Response

(Doc. 287), pp. 2-4.

In response, Class Counsel moves to supplement the record, *see* Motion (Doc.

289), attaching the September Claims Administration Report – identifying over 9,045

total minutes of live agent calls and over 2,000 calls to the automated claims system in

September 2013 alone (Ex. 1 to Doc. 289) – as well as the claims administration bill for

September in the amount of $30,402.36 (Ex. 2).  "There will be highs and lows along the

way," Class Counsel states, "but there most assuredly will continue to be class member

contacts generating increases in the cost of administration the recurrence of which will be

elongated by the period of the appeal."  *See id.*  I agree.  The nature of the class action

settlement, its nationwide scope, and the sheer number of class members – many of whom

are unsophisticated or non-native English speakers or otherwise unfamiliar with legal

proceedings or their rights under the Agreement – portends a hands-on claims process requiring considerable effort on the part of the Claims Administrator.  As Class Plaintiffs correctly observe, the setting of an appeal bond necessarily involves forward-looking estimates and educated guesswork.  Based on my familiarity with this case and the record before me, Class Counsel's cost estimate of $1,007,294 is not unreasonable and is not asserted as a "tactic" merely to "bully" the appealing objectors.

Having considered Mr. Dorsey's response to the Motion for Appeal Bond together with Plaintiffs' Motion to Supplement the Record and related briefing, I REAFFIRM my Order granting the Appeal Bond (Doc. 272) and ORDER a bond in the amount of $1,007,294 be payable jointly and severally by Ms. Nelson and Mr. Dorsey.  With the exception of ancillary attorney fee issues, which have been referred to Magistrate Judge Tafoya and do not affect appellate jurisdiction, the proceedings in the district court are CONCLUDED.

Dated October 21, 2013.

**s/John L. Kane**_____
SENIOR U.S. DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **09-cv-00938-JLK** (consolidated with 10-cv-765-JLK)

**JAMES P. TENNILLE, on behalf of himself and all others similarly situated,**

> Plaintiff,

v.

**THE WESTERN UNION COMPANY, a Delaware corporation,**

Defendant.

---

### ORDER TO SHOW CAUSE

---

Kane, J.

Plaintiffs' Motion for Order to Show Cause (Doc. #02), filed October 28, 2013, is

**GRANTED**. By way of background, an Amended Final Judgment and Order of

Dismissal (Doc. 256) was entered on June 26, 2013 giving final approval to the class

action settlement in the above-captioned case. Class members Sikora Nelson and Paul

Dorsey separately objected. Those objections were overruled, and the objectors filed

separate Notices of Appeal. Class Plaintiffs moved for an appeal bond. Ms. Nelson and

Mr. Dorsey were given the opportunity to fully present their arguments why an appeal

bond should not be posted. On September 10, 2013, having received no response from

Mr. Dorsey and over Ms. Nelson's objections, I ordered Sikora Nelson and Paul Dorsey

to post an appeal bond in the amount of $1,007,294 to be payable jointly and severally.

After receiving a letter from Mr. Dorsey later that same day, I gave Mr. Dorsey additional

time to respond to the motion for appeal bond and held my order granting it in abeyance.

Mr. Dorsey filed his response on October 15, 2013 and on October 21, 2013, I entered an order reaffirming the appeal bond order.

As of October 28, 2013, no bond has been posted and neither Objector has responded to Class Counsel's request for confirmation as to whether they will post the bond or voluntarily dismiss their appeals.  In the meantime, briefing on Objectors' appeals is ongoing, and class settlement administrative costs are accruing.  A valid court order as to the imposition of the appeal bond exists and has not been excused by any mitigating order of the Tenth Circuit Court of Appeals.  I specifically find that both Objectors are aware of that order, and are disobeying that order.  Under the authority established by *F.T.C. v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) and *Rodriguez v. IBP, Inc.*, 243 F.3d 1221 (10th Cir. 2001), both are subject to sanctions for civil contempt.  In order to hear from the Objectors on this matter before any sanctions are imposed, it is

**ORDERED** that on or before November 8, 2013, Objectors Sikora Nelson and Paul Dorsey shall show good and sufficient cause why they should not be held in contempt of court for their failure to comply with this Court's Appeal Bond Order (Doc. 299). Objectors' RESPONSE(S) shall be in writing, and *received* by the Court by the due date via CM/ECF filing or, in Mr. Dorsey's case, by mail or telefacsimile sent to the Clerk's Office.

Dated October 29, 2013            **s/John L. Kane**
                                   SENIOR U.S. DISTRICT JUDGE

c: Mr. Paul Dorsey via email to p.dorsey@comcast.net